IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>FANSTA SILLAH,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Plaintiff,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>v.</td><td></td><td>Civil Action No. PX 16-1441</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>SYLVIA BURWELL, <em>et al.</em>,</td><td>*</td><td></td></tr>
<tr><td>Defendants.</td><td></td><td></td></tr>
<tr><td></td><td>******</td><td></td></tr>
</table>

**MEMORANDUM OPINION**

Pending in this employment discrimination case is a motion for partial dismissal of the amended complaint filed by Defendant Leidos Biomedical Research, Inc. ("Leidos"), ECF No. 15, a motion to dismiss the amended complaint, or in the alternative, for summary judgment filed by Defendant Sylvia Burwell ("Burwell"), ECF No. 25, and Plaintiff Fantah Sillah's ("Plaintiff") emergency "motion to convert portions of Defendant Burwell's motion to dismiss into a motion for summary judgment and to deny the motion, without prejudice until the completion of discovery," ECF No. 28, incorporated by reference into Plaintiff's response to Defendant Burwell's motion, ECF No. 30. The issues have been fully briefed, and the parties were granted a hearing on the matter, which took place on March 17, 2017. *See* ECF No. 45. For the reasons stated below, Defendant Leidos' Motion is GRANTED IN PART and DENIED IN PART, Defendant Burwell's Motion is GRANTED IN PART and DENIED IN PART, and Plaintiff's Motion is GRANTED.

# I.     BACKGROUND[1]

## A. Factual Background

Plaintiff worked for Leidos and the National Institutes of Health ("NIH") as a Patient

Care Coordinator in the National Institute of Arthritis and Musculoskeletal and Skin Diseases in

Bethesda, Maryland between February 2012 and August 2015. ECF No. 14 at 4. Plaintiff is a

black female who qualified as a person with a disability because of her high-risk pregnancy. ECF

No. 14 at 4. The National Institute of Arthritis and Musculoskeletal and Skin Diseases is an

institute within the U.S. Department of Health and Human Services (the "Agency"). ECF No.

25-3 at 1. Leidos is a Maryland corporation and contracts with the federal government to provide

support services. ECF No. 25-4 at 1.

In December 2014, Plaintiff experienced complications of her first pregnancy that led to

the loss of her child, surgeries and a protracted recovery for which she used lengthy approved

leave in late 2014 and early 2015. ECF No. 14 at 7. On April 20, 2015, Leidos issued Plaintiff's

performance appraisal based entirely on feedback provided by NIH staff and rated Plaintiff as

"Generally Meets Expectations." ECF No. 14 at 7.

In early June 2015, Leidos and NIH learned that Plaintiff was pregnant again. ECF No.

14 at 7. On June 24, 2015, shortly after learning of Plaintiff's second pregnancy, Leidos placed

Plaintiff on a 60-day Performance Improvement Plan ("PIP"). ECF No. 14 at 7. Plaintiff was told

she was placed on a PIP because she was not in the practice of updating her voicemail or finding

coverage for her duties when she was away from the office. ECF No. 14 at 8. Plaintiff alleges

that her supervisors also held her to higher standards than her white colleagues. According to

---

[1] Unless otherwise noted, the facts here are construed in the light most favorable to Plaintiff, the
nonmoving party.

Plaintiff, none of Plaintiff's white and/or nonpregnant colleagues were subjected to the same requirements. ECF No. 14 at 8.

On July 6, 2015, Plaintiff provided her NIH and Leidos first-line supervisors with a doctor's note stating that Plaintiff would need to take leave from July 7, 2015 through July 15, 2015 to accommodate a surgery related to her pregnancy. ECF No. 14 at 8. Upon her return on July 14, 2015, Plaintiff provided her Leidos supervisors with another doctor's note which cautioned that Plaintiff should avoid walking and excessive climbing of stairs. ECF No. 14 at 8. Then, on August 12, 2015, Plaintiff provided her Leidos supervisors a third doctor's note explaining that Plaintiff was restricted to desk duty and that she should not be walking or using the stairs at work because of her high-risk pregnancy. ECF No. 14 at 8.

At the request of Plaintiff, Plaintiff met with her Leidos and NIH supervisors on August 18, 2015. ECF No. 14 at 8. During the meeting, Plaintiff advised Leidos and NIH of her high-risk pregnancy due to an incompetent cervix. ECF No. 14 at 9. Plaintiff asked that she be limited to working at her desk and excused from picking up and delivering blood samples from the lab each Thursday on an hourly basis. ECF No. 14 at 9. In response, one of Plaintiff's Leidos supervisors, Cheryl Talar-Williams, treated her request for a reasonable accommodation with derision and rejected it. ECF No. 14 at 9. Ms. Talar-Williams also ridiculed Plaintiff's suggestion that NIH couriers perform the blood runs for her. ECF No. 14 at 9. Plaintiff then informed Ms. Talar-Williams that, in light of Ms. Talar-Williams' response, Plaintiff would be lodging a complaint with the NIH Equal Employment Opportunity Office ("EEO"). ECF No. 14 at 9.

On August 19, 2015, Plaintiff contacted both the NIH Ombudsman and EEO office. ECF No. 14 at 9; ECF No. 21-10 at 1. Six days later, on August 25, 2016, NIH and Leidos told Plaintiff that she had failed the PIP and she was terminated her from both her NIH and Leidos

positions. ECF No. 14 at 9. Because Leidos announced Plaintiff's termination, Plaintiff instead resigned. ECF No. 14 at 10.

## B. Procedural History

### 1. Defendant Leidos

On September 2, 2015, Plaintiff initially filed an intake form with the Montgomery County Office of Human Rights ("MCOHR"), alleging Leidos discriminated against her by placing Plaintiff on a PIP, failing to accommodate her doctor's recommendations, and terminating her employment. ECF No. 21-2 at 3. Plaintiff checked the boxes for "sex/gender," "race," "disability/physical," and "family responsibility" as the bases for these discrimination claims. ECF No. 21-2 at 2. On December 23, 2015, Plaintiff filed a Complaint of Alleged Discrimination ("MCOHR Complaint") against Leidos with the MCOHR. ECF No. 15-2. In the MCOHR Complaint, Plaintiff recounts the timeline of her pregnancy, her placement on a PIP, her requests for restricting her physical activity, the August 18, 2015 meeting with her supervisors, and Leidos' response to her request. ECF No. 15-2 at 2. Plaintiff expressly alleged that Defendant "denied me a reasonable accommodation and terminated my employment based on my sex, [sic] and marital status." ECF No. 15-2 at 2. MCOHR cross-filed Plaintiff's MCOHR Complaint with the Equal Employment Opportunity Commission.[2] The EEOC issued a right-to-sue letter for Plaintiff's claims against Defendant Leidos on August 8, 2016. ECF No. 43-1.

---

[2] "In 'deferral states,' or states with a certified Fair Employment Practice Agency ("FEPA"), [the exhaustion] process begins when a claimant files a charge of discrimination with either the state FEPA . . . or with the EEOC." *Perez Cordero v. Wal-Mart PR, Inc.*, 235 F. Supp. 2d 95, 100 (D.P.R. 2002), *as amended* (Dec. 9, 2002). The Montgomery County Office of Human Rights (MCOHR) is a Fair Employment Practices Agency (FEPA), and it maintains a work-sharing agreement with the EEOC. *See* 29 C.F.R. § 1601.74; U.S. Equal Employment Opportunity Commission, State and Local Agencies, (last accessed Mar. 8, 2017), https://www.eeoc.gov/field/baltimore/fepa.cfm.

### 2.  Defendant Burwell (The Agency)

Plaintiff contacted the Agency's EEO office on August 28, 2015. ECF No. 25-2 at 20. On

September 25, 2015, the Agency issued Plaintiff a Notice of Right to File Formal Complaint.

ECF No. 25-2 at 27. On October 12, 2015, Plaintiff filed her formal complaint of discrimination

("EEOC Charge") within the fifteen-day window instructed by the Notice of Right to File. ECF

No. 25-2 at 15; *see also* ECF No. 25-2 at 32 (Agency's Notice of Receipt). The Agency provided

Plaintiff with a letter acknowledging receipt of the formal filing and noting that "[u]nless an

amendment is submitted or there is an agreement in writing to extend the time period, the

investigation of your client's complaint must be completed within 180 days." ECF No. 25-2 at

30. The letter of receipt also stated that, "in the absence of an amended complaint or agreed-upon

extension, your client also has the right to file a civil action within 180 days of filing this

complaint, if no appeal has been filed or final action taken." *Id.* at 31. On December 22, 2015,

the Agency then sent a letter informing Plaintiff that it had accepted her claim of discrimination

for investigation. ECF No. 25-2 at 32. The Agency identified Plaintiff's claim as discrimination

on the bases of her race (Black), sex (female) and disability (physical) when "on August 25,

2015, Complainant was terminated from her contract position as a Patient Care Coordinator II.

Complainant alleges that she was terminated by her supervisors upon learning of her high risk

pregnancy." *Id.* The notice further instructed Plaintiff that "if you believe that the claim is not

correctly identified, you must notify this office in writing within seven (7) calendar days after

receipt of this letter as to why you believe the claim is not correctly identified." *Id.*

Eighty-six days later, on March 17, 2016, Plaintiff's counsel emailed the Agency's EEO

office requesting an amendment to her EEOC Charge to add a claim of retaliation. ECF No. 25-2

at 36; ECF No. 30-3 at 1. Plaintiff explained that her original claim had been incorrectly

5

identified, and Plaintiff had raised the retaliation claim in her formal complaint. *Id.* The Agency

did not respond. Plaintiff emailed the Agency again on April 4, 2016, requesting the status of her

amendment to her complaint, ECF No. 25-2 at 38, and on April 21, 2016 requesting that the

amendment be acknowledged in writing. ECF No. 25-2 at 36. And again, the Agency did not

respond.

On April 11, 2016, 182 days after the filing of Plaintiff's EEOC Charge, Plaintiff signed

a form entitled "Notice of Extension," which states that the Agency may investigate her

complaint for an additional period up to 90 days. ECF No. 25-2 at 35. On May 13, 2016, twenty-

two days later, Plaintiff filed her Complaint in this Court. ECF No. 1. On May 16, 2016, Plaintiff

informed the EEO investigator that she had filed a complaint in this Court. ECF No. 25-2 at 42.

Plaintiff filed an Amended Complaint on June 21, 2016. ECF No. 14.

Against both Defendants, Plaintiff asserts claims of (1) sex/pregnancy discrimination

under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Maryland Human Relations

Act, Md. Code, State Government, §§ 20-606, 20-1013, 20-1202, and the Montgomery County

Human Rights Act, Montgomery County Code 27-9; (2) disability discrimination under the

Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §§ 12101 *et seq.*, the

Rehabilitation Act of 1973, 29 U.S.C.A. §§ 701–797 (the "Rehabilitation Act"), the Maryland

Human Relations Act, and the Montgomery County Human Rights Act; and (3) retaliation under

Title VII, the ADA, Rehabilitation Act, the Maryland Human Relations Act, and the

Montgomery County Human Rights Act (collectively Count IV).[3] Against Defendant Leidos,

---

[3] At the motions hearing held on March 17, 2016, Plaintiff withdrew her claims of race-based retaliation
under Section 1981 and Title VII.

Plaintiff alleges claims of race discrimination under 42 U.S.C. § 1981.[4] And against Defendant Burwell, Plaintiff asserts claims of race discrimination under Title VII, the Maryland Human Relations Act, and the Montgomery County Human Rights Act.

Plaintiff claims that she was held to standards "that were more strict than her colleagues who were either white or not pregnant." ECF No. 14 at 8. Plaintiff also claims that the Agency "acted derisively" when she requested an accommodation due to her high-risk pregnancy, and in response, Plaintiff contacted the EEO Office. ECF No. 14 at 9. Plaintiff alleges that she was ultimately terminated as a result of discrimination based on her sex (pregnancy), disability, and race. Plaintiff claims that this same conduct constitutes a failure to accommodate claim under the Rehabilitation Act and ADA and a retaliation claim in violation of Title VII, the Rehabilitation Act, and the ADA.

## II.      ANALYSIS

### A.  Defendant Leidos' Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendant Leidos first argues that the Court lacks subject matter jurisdiction over some or all of Plaintiff's claims against it for failure to exhaust her administrative remedies. For this reason, Defendant Leidos contends Plaintiff's disability discrimination, race discrimination, and retaliation claims must be dismissed.[5]

### 1.  Administrative Exhaustion Requirements

Before a plaintiff may file suit in federal court under Title VII, she must first exhaust her administrative remedies. *Medlock v. Rumsfeld*, 336 F. Supp. 2d 452, 462 (D. Md. 2002) (citing

---

[4] At the motions hearing held on March 17, 2016, Plaintiff withdrew her claim of race discrimination under Title VII against Defendant Leidos, solely pursuing her claim of race discrimination under 42 U.S.C. § 1981.

[5] Defendant Leidos withdrew its argument for dismissal of Plaintiff's Title VII sex/pregnancy discrimination claim. ECF Nos. 36, 38.

42 U.S.C. § 2000e–16(c); *Brown v. General Serv. Admin.*, 425 U.S. 820, 832 (1976); *Zografov v. V.A. Medical Center*, 779 F.2d 967, 968–69 (4th Cir. 1985)); *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000); *Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012). Plaintiff's ADA, Rehabilitation Act, Maryland Human Relations Act, and Montgomery County Human Rights Act claims are governed by the exhaustion requirements and filing procedures applicable to Title VII claims against federal employers. *Lewis v. MV Transp., Inc.*, 2012 WL 4518541, at *3 (D. Md. Sept. 28, 2012) ("Under the ADA, the exhaustion requirements and filing procedures are identical to those applicable to claims under Title VII."); *Kim v. Potter*, No. DKC 09-2973, 2010 WL 2253656, at *4 (D. Md. June 2, 2010), *aff'd*, 416 F. App'x 297 (4th Cir. 2011) (Rehabilitation Act claims governed by the exhaustion requirements and filing procedures applicable to Title VII claims); *Moore v. Sprint Communications Co.*, No. RDB–11–00290, 2012 WL 4480696 (D. Md. Sept. 27, 2012) ("Title 20's administrative requirements are akin to those of Title VII.") (citing *Cuffee v. Verizon Commc'ns Inc.*, 755 F. Supp. 2d 672, 678 (D. Md. 2010)); *Whittaker v. David's Beautiful People, Inc.*, No. DKC 14-2483, 2016 WL 429963, at *2 (D. Md. Feb. 4, 2016) ("Maryland courts construe . . . claims [under the Montgomery County Human Rights Act] similarly to those made under Title VII."); *cf. Anderson v. Discovery Commc'ns, LLC*, 814 F. Supp. 2d 562, 569 (D. Md. 2011), *aff'd*, 517 F. App'x 190 (4th Cir. 2013), *as amended* (May 3, 2013) ("As a general matter, Maryland courts rely on ADA case law for guidance when interpreting the MCHRA.") (citing *Ridgely v. Montgomery Cnty.*, 164 Md. App. 214, 883 A.2d 182, 193 (2005)).[6] Failure to exhaust "deprives

---

[6] For Plaintiff's claims of disability discrimination, because Maryland has applied the Montgomery County Human Rights Act and Maryland Human Relations Act by looking to ADA case law, it is appropriate to consider those claims of disability discrimination together. *See Anderson v. Discovery Commc'ns, LLC*, 517 F. App'x 190, 193 n.3 (4th Cir. 2013), *as amended* (May 3, 2013) (citing *Ridgely v. Montgomery Cnty.*, 883 A.2d 182, 193 (2005)) (Montgomery County Human Rights Act); *accord Lewis v. Univ. of Maryland, Baltimore*, No. SAG-12-298, 2012 WL 5193820, at *3 (D. Md. Oct. 18, 2012),

the federal courts of subject matter jurisdiction over the claim." *Kim*, 2010 WL 2253656, at *4; *accord Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (citing *Davis v. North Carolina Dep't of Corr.*, 48 F.3d 134, 138–40 (4th Cir. 1995)); *Melendez v. Sebelius*, 611 F. App'x 762, 764 (4th Cir. 2015).

Importantly, the scope of the plaintiff's federal causes of action is circumscribed by the contents of the formal administrative complaint as identified and investigated by the EEOC or its County counterpart. *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (internal quotation marks omitted). Claims in a judicial complaint then may be advanced in this Court where they are "reasonably related" to the administrative charge and "can be expected to follow from a reasonable administrative investigation." S*ydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 594 (4th Cir. 2012). *See also McCray v. Maryland Dep't of Transportation*, 662 F. App'x 221, 223 (4th Cir. 2016); *Jones v. Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 669 (4th Cir. 2015); *Calvert Group, Ltd.*, 551 F.3d at 300; *Evans v. Tech. Applications & Servs. Co.*, 80 F.3d 954, 963 (4th Cir. 1996). "The touchstone for exhaustion is whether plaintiff's administrative and judicial claims are 'reasonably related,' . . . not precisely the same . . . ." *Id.* at 595 ((citation omitted); *accord Johnson v. SecTek, Inc.*, No. ELH-13-3798, 2015 WL 502963, at *4 (D. Md. Feb. 4, 2015).

---

*aff'd*, 533 F. App'x 270 (4th Cir. 2013) (citing *Md. Comm'n on Human Relations v. Mayor & City Council*, 86 Md. App. 167, 586 A.2d 37, 40 (Md. Ct. Spec. App. 1991)) (Maryland Human Relations Act's reasonable accommodation requirement modeled after the Rehabilitation Act). For Plaintiff's claims of race, sex, and pregnancy discrimination, Plaintiff's claims under the Montgomery County Human Rights Act and Maryland Human Relations Act will be analyzed with her claims under Title VII. *McGruder v. Epilepsy Found. of Am., Inc.*, No. 11-CV-02310-AW, 2012 WL 832800, at *3 (D. Md. Mar. 9, 2012) (citing *Chappell v. S. Md. Hosp.*, 320 Md. 483, 578 A.2d 766 (1990)) (Maryland Human Relations Act); *Idris v. Ratner Co./Creative Hairdressers*, No. TDC-14-1425, 2014 WL 5382633, at *3 (D. Md. Oct. 21, 2014) (citing *Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 756 (Md. 2007)) (Montgomery County Human Rights Act).

Where a complainant alleges a basis for discrimination for the first time in federal court, the claim cannot proceed for failure to exhaust. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132–33 (4th Cir. 2002) (plaintiff failed to exhaust claim for sex discrimination because EEOC charge alleged only racial discrimination); *Calvert Grp., Ltd.*, 551 F.3d at 301 (plaintiff failed to exhaust claim for race, age, or sex discrimination because EEOC charge only alleges retaliation). Generally, "a plaintiff has failed to exhaust administrative remedies where a charge of discrimination references 'different time frames, actors, and discriminatory conduct' than the allegations found in a complaint." *Wright v. Kent Cty. Dep't of Soc. Servs.*, No. ELH-12-3593, 2014 WL 301026, at *11 (D. Md. Jan. 24, 2014) (quoting *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005)). By contrast, a plaintiff satisfies the exhaustion requirement when "both the EEOC charge and the complaint included claims of retaliation by the same actor, but involved different retaliatory conduct," *Sydnor*, 681 F.3d at 594 (citing *Smith*, 202 F.3d at 248), or when the administrative charge and formal litigation concerned "discriminat[ion] in promotions" but involved different aspects of the "promotional system." *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981).

### 2.   **Plaintiff's Disability Discrimination Claims against Defendant Leidos**[7]

Defendant Leidos asserts that Plaintiff's disability discrimination claims under the ADA, Rehabilitation Act, Maryland Human Relations Act, and the Montgomery County Human Rights Act (collectively, the "disability discrimination claims") exceed the scope of those preserved in her MCOHR Complaint, thus depriving this Court of subject matter jurisdiction as to those newly asserted grounds for relief. The Court is not persuaded.

---

[7] Plaintiff can bring a Rehabilitation Act claim against Defendant Leidos, a private entity, if it receives federal funding. *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 371 (D. Md. 2011) ("[T]o show a violation of the Rehabilitation Act by a state, local, or private entity, a plaintiff must demonstrate that the "program or activity" at issue receives federal funding.").

Plaintiff's disability discrimination claims as alleged in her MCOHR Complaint are reasonably related to the exhausted sex and marital status claims since all claims arise out of alleged wrongful termination and denial of "reasonable accommodations" due to plaintiff's pregnancy and its complications. In Plaintiff's initial intake form with the Maryland Commission on Civil Rights, she notes "sex/gender," "race," "family responsibilities," and "disability/physical" as her basis for discrimination. ECF No. 21-2 at 2. In Plaintiff's MCOHR Complaint, Plaintiff alleges that she informed her supervisor "that [her] pregnancy was high risk and [she] needed to limit [her] physical activity at work and limit [herself to 'desk duty.' ]" ECF No. 15-2 at 2. The MCOHR Complaint further alleges that she communicated her doctor's instructions to her supervisor and she received no response. ECF No. 15-2 at 2. The MCOHR Complaint concludes: "The Respondent denied me a reasonable accommodation and terminated my employment based on my sex, [sic] and marital status." ECF No. 15-2 at 2.

Plaintiff has alleged the type of discrimination (denial of a reasonable accommodation) and the basis of the disability (high-risk pregnancy) in both her MCOHR Complaint and her Amended Complaint in this Court. Moreover, both the MCOHR Complaint and the Amended Complaint reference the same "time frames, actors, and discriminatory conduct." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005). "Plaintiff's allegations regarding discrimination on the basis of pregnancy are sufficiently intertwined with her allegations of discrimination on the basis of disability such that investigation of the former would reasonably and naturally give rise to charges under the latter." *Bray v. Town of Wake Forest*, No. 5:14-CV-276-FL, 2015 WL 1534515, at *10 (E.D.N.C. Apr. 6, 2015) (even where plaintiff left unchecked a box marked "DISABILITY," "[t]he facts alleged in the formal Charge of Discrimination, while scant, [were] reasonably related to the facts alleged in plaintiff's ADA claim. Reasonable

investigation of this charge would have inquired into the reasons for plaintiff's termination, the nature of the Town's light duty policy, and whether plaintiff should have qualified for that light duty policy"); *see also Kucharski v. Cort Furniture Rental*, 536 F. Supp. 2d 196, 201 (D. Conn. 2007) ("the disability claims are reasonably related to the exhausted Title VII/CFEPA claims since both claims arise out of alleged wrongful termination due to plaintiff's pregnancy and its complications"), *rev'd on other grounds*, 594 F. Supp. 2d 207 (D. Conn. 2008); *Cvern v. Enter. Sol. Providers, Inc.*, 2001 WL 533723, at *3 (S.D.N.Y. May 18, 2001) ("Because the EEOC claim reported discrimination based on pregnancy and related complications, the disability claim arises out of the same conduct as the discrimination claim and fell within the reasonable scope of the EEOC investigation."); *cf. Chambers v. Wildman, Harrold, Allen & Dixon*, No. 97 C 5715, 1997 WL 666507, at *3 (N.D. Ill. Oct. 23, 1997) (plaintiff failed to exhaust her disability claim when she only mentioned pregnancy discrimination without giving any indication of a pregnancy-related disability or failure to provide reasonable accommodations in her charge of discrimination).

Defendant's reliance on *Cooper v. Dolgencorp, Inc.*, No. CIV-07-192-M, 2008 WL 938599 (W.D. Okla. Apr. 4, 2008) is misplaced. In *Cooper*, the court found that plaintiff failed to exhaust because she both failed to "check the disability box when asked the type of discrimination she was claiming" but also "left blank the question on her EEOC General Intake Questionnaire asking whether she has or was perceived to have a disability." *Cooper v. Dolgencorp, Inc.*, No. CIV-07-192-M, 2008 WL 938599, at *2 (W.D. Okla. Apr. 4, 2008). Thus, the *Cooper* court found the EEOC lacked the requisite of plaintiff's disability to investigate the claims. Here, Plaintiff checked "disability" on her intake form and alleged facts in her MCOHR

Complaint specifically surrounding the denial of her accommodation. Accordingly, Plaintiff adequately exhausted her remedies regarding her disability discrimination claims.

### 3.   Plaintiff's Retaliation Claims against Defendant Leidos

Plaintiff brings claims of retaliation against Leidos under both Title VII and the ADA.[8] Defendant Leidos argues that the narrative portion of Plaintiff's MCOHR Complaint lacked any discussion related to ADA retaliation, and thus Plaintiff's claims are barred by her failure to exhaust.[9]  The Court disagrees. Plaintiff's MCOHR Complaint includes facts reasonably related to a claim of retaliation under the ADA with regard to disability-based discrimination due to her high-risk pregnancy.

To bring a claim of retaliation under the ADA, "a plaintiff must show that: (1) she engaged in a protected activity; (2) her employer acted adversely against her; and (3) her protected activity was causally connected to her employer's adverse action." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 392 (4th Cir. 2001). The ADA's retaliation provision states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a) (emphasis added).

The MCOHR Complaint alleges that Plaintiff requested an accommodation by informing her Leidos supervisor of her doctor's instructions and limitations around August 12, 2015. ECF No. 21-4. The MCOHR Complaint further alleges that on August 18, 2015, Plaintiff was called

---

[8] "[W]hether suit is filed against a federally-funded entity under the Rehabilitation Act or against a private employer under the ADA, the substantive standards for determining liability are the same." *Myers v. Hose*, 50 F.3d 278, 281 (4th Cir. 1995); *accord Flood v. Univ. of Maryland Med. Sys. Corp.*, No. GLR-12-2100, 2014 WL 7363237, at *7 (D. Md. Dec. 23, 2014).

[9] At oral argument, Defendant Leidos withdrew their argument that Plaintiff failed to exhaust her pregnancy-related retaliation claim under Title VII.

to a meeting with "Leidos and NIH officials" where they "treated [her] doctor's instructions and limitations with derision." ECF No. 21-4. Then, as detailed in the MCOHR Complaint, on August 25, 2015, Plaintiff was fired. ECF No. 21-4.

Plaintiff's request for an accommodation is a protected activity under the ADA. *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 706 (4th Cir. 2001) (requesting an accommodation is a protected activity under the ADA). Plaintiff's MCOHR Complaint further alleges that she was terminated contemporaneously with confronting her employer regarding the denial of reasonable accommodations for her disability. As such, Plaintiff alleged the "who, what, when, and where" of her disability-based retaliation claim sufficient to allow for a reasonable investigation. *See Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005); *accord Parkinson v. Anne Arundel Med. Ctr., Inc.*, 214 F. Supp. 2d 511, 517 n.9 (D. Md. 2002), *aff'd sub nom. Parkinson v. Anne Arundel Med. Ctr.*, 79 F. App'x 602 (4th Cir. 2003) ("Although plaintiff did not check the retaliation box on his Equal Employment Opportunity Commission charge of discrimination, his attached narrative was similar to his complaint in this case and could have led the EEOC to investigate a retaliation claim."). Thus, Plaintiff's ADA retaliation claim survives dismissal.

### 4.  Plaintiff's Title VII Race Discrimination Claims against Defendant Leidos

Plaintiff's claims of race discrimination against Defendant Leidos, however, must be dismissed. Plaintiff included "race" as one of the bases of discrimination when she submitted her inquiry to MCOHR. But the MCOHR Complaint is completely silent regarding any alleged race discrimination. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132–33 (4th Cir. 2002) (plaintiff failed to exhaust claim for sex discrimination because EEOC Charge alleged only racial discrimination). Consequently, Plaintiff's factual allegations in her MCOHR Complaint limited

the administrative investigation to discrimination based on sex, disability, and marital status.

Accordingly, Plaintiff's race discrimination claims against Defendant Leidos in violation of Title

VII, the Maryland Human Relations Act, and the Montgomery County Human Rights Act, are

dismissed.

**B.  Defendant Leidos' Motion to Dismiss for Failure to State a Claim**

Defendant Leidos also moves to dismiss Plaintiff's claims of disability discrimination

and retaliation under the ADA pursuant to Rule 12(b)(6).[10]

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled

allegations of the complaint as true" and "construe the facts and reasonable inferences derived

therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474

(4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially

aimed at assuring that the defendant be given adequate notice of the nature of a claim being

made against him, they also provide criteria for defining issues for trial and for early disposition

of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The

mere recital of elements of a cause of action, supported only by conclusory statements, is not

sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d

435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The factual

allegations of a complaint "must be enough to raise a right to relief above the speculative level

on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell

Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this

standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim.

However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684

---

[10] As confirmed  during the motions hearing, Defendant Leidos does not make a similar Rule 12(b)(6)
challenge to Plaintiff's Title VII sex/pregnancy discrimination claim.

F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

In the context of employment discrimination claims, "a plaintiff is not required to plead facts that constitute a prima facie case" to survive a motion to dismiss. *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-15 (2002)). For example, "plaintiff is not required to include allegations—such as the existence of a similarly situated comparator—that would establish a prima facie case of discrimination under the 'indirect' method of proof." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–12 (2002)). However, her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555).

### 1. Section 1981 Claims

Defendant Leidos argues that Plaintiff's conclusory allegation regarding race discrimination are insufficient to make out a cognizable claim. ECF No. 15 at 16. A claim under 42 U.S.C. § 1981 is cognizeable when a plaintiff's rights to make and enforce contracts, including employment contracts, are violated based on her race. *See* 42 U.S.C. § 1981(a); *Miller v. Kramon & Graham, P.A.*, No. GJH-15-1081, 2016 WL 4379229, at *4 (D. Md. Aug. 16, 2016) (citing *Spriggs v. Diamond Auto Glass,* 165 F.3d 1015, 1018-19 (4th Cir. 1999)).  Under § 1981, "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S. C. § 1981(b). Such claims may lie even in an at-will

employment relationship. *Miller*, 2016 WL 4379229, at *4 (citing *Spriggs*, 165 F.3d at 1018–19).

In the employment context, courts analyze claims of racial discrimination brought under § 1981 consistent with those brought under Title VII of the Civil Rights Act of 1964. *Gairola v. Va. Dept. of Gen. Serv.*, 753 F.2d 1281, 1285 (4th Cir. 1985). *Accord Bowling v. Humanim, Inc.*, No. JKB-16-3298, 2017 WL 713862, at *2 (D. Md. Feb. 22, 2017).[11] Thus, to survive a motion to dismiss, a complaint under § 1981 must allege facts allowing for a reasonable inference that an employer  treated the complaining employee adversely  because of the complainant's race. *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015).

Plaintiff is not required as a matter of law to aver in her complaint that similarly situated employees who were treated more favorably (e.g. comparators) to succeed on a discrimination claim, *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545 (4th Cir. 2003); c*f. Moss v. Pasquotank Cty.*, No. 2:10-CV-56-BR, 2012 WL 2325846, at *8 (E.D.N.C. June 19, 2012) (analysis of the similarly situated employees unnecessary where plaintiff provides other facts giving rise to an inference of discrimination). However, once a plaintiff bases her allegations entirely upon a comparison to an employee from a non-protected class, she "must demonstrate that the comparator was 'similarly situated' in all relevant respects." *Johnson v. Baltimore City Police Dep't*, No. ELH-12-2519, 2014 WL 1281602, at *19 (D. Md. Mar. 27, 2014) (citing *Sawyers v. United Parcel Serv.*, 946 F. Supp. 2d 432, 442 n.10 (D. Md. 2013), *aff'd*, 576 F.

---

[11] Unlike race-based Title VII claims, however, a plaintiff need not exhaust administrative remedies under § 1981. *See Qualls v. Giant Food, Inc.*, 187 F. Supp. 2d 530, 534 (D. Md. 2002), *aff'd sub nom. Skipper v. Giant Food Inc.*, 68 F. App'x 393 (4th Cir. 2003). Accordingly, this Court must reach Defendant Leidos' argument for dismissal of Plaintiff's § 1981 claims under Rule 12(b)(6) even though Plaintiff's Title VII race-based claims have been dismissed on failure-to-exhaust grounds.

App'x 199 (4th Cir. 2014)). "Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (quoting *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992)). *See also Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007) ("[T]he purpose of the similarly situated requirement is to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel . . . ."), *aff'd*, 553 U.S. 442 (2008).

Even "[i]dentifying one comparator [] who was treated more favorably may satisfy the [] test." *Carter v. Maryland Aviation Admin.*, No. CIV. CCB-04-3065, 2005 WL 1075328, at *4 n.1 (D. Md. May 6, 2005). And in a disparate discipline case, a plaintiff "need not plead precise comparability with respect to fellow employees who were treated more favorably to survive a motion to dismiss." *Roberts v. Coffey*, No. CIV.A. DKC 10-3359, 2012 WL 2000353, at *4 n.11 (D. Md. June 4, 2012) (citing *Alexander v. City of Greensboro*, 762 F. Supp. 2d 764, 796 (M.D.N.C. 2011) (noting, in the context of disparate discipline, that "precise equivalence . . . between employees" is unnecessary "to plead an inferential case" (citing *Moore v. City of Charlotte, N.C.*, 754 F.2d 1100, 1107 (4th Cir. 1985)))).

Here, Plaintiff's claims regarding race-based disparate treatment are insufficiently pleaded to survive dismissal. Plaintiff broadly asserts that she was held to more onerous and rigorous standards at work than "her colleagues who were either white or not pregnant" because they were not disciplined or placed on PIPs. ECF No. 14 at 8; *see also* ECF No. 14 at 11 ("Caucasian employees whose performance was comparable to that of Plaintiff were not placed on a PIP and terminated."). But Plaintiff fails to plead sufficient facts showing the more

favorably treated co-workers were true comparators in that the co-workers held the same

position, performed the same work, and were supervised by the same individuals as Plaintiff. *See*

*e.g.*, *Johnson v. Baltimore City Police Dep't*, No. CIV.A. ELH-12-2519, 2014 WL 1281602, at

*20 (D. Md. Mar. 27, 2014); *Mumpower v. City of Bristol, Va.*, No. 1:13CV00074, 2014 WL

992095, at *2 (W.D. Va. Mar. 14, 2014); *see also Acosta v. Ingerman & Horwitz*, L.L.C., No.

CIV. WDQ-14-1605, 2015 WL 795108, at *4 (D. Md. Feb. 24, 2015) (denying motion where

similarly situated employees sufficiently plead); *Taylor v. Millennium Corp.*, No. 1:15-CV-1046,

2016 WL 927185, at *7 (E.D. Va. Mar. 4, 2016) (same). Put differently, bare allegations that

white colleagues were treated more favorably amounts to little more than speculation that the

adverse treatment of Plaintiff was race-based. *See Coleman v. Maryland Court of Appeals*, 626

F.3d 187, 191 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Maryland*, 566

U.S. 30 (2012) (Dismissing a claim where "the complaint fails to establish a plausible basis for

believing Broccolina and Coleman were actually similarly situated or that race was the true basis

for Coleman's termination."). Without more, Plaintiff's claims do not plausibly aver that she was

terminated on account of her race. Accordingly, the Court dismisses Count III of the Complaint

without prejudice to refile an amended complaint supporting her § 1981 claims.

### 2.  ADA Claims of Retaliation against Defendant Leidos

Defendant Leidos argues briefly in a footnote, and without any legal support, that

Plaintiff's ADA retaliation claim must be dismissed because Plaintiff fails to allege that she

engaged in protected activity related to an alleged disability. ECF No. 15-1 at 17. The Court

disagrees. As previously detailed, Plaintiff alleges that she requested an accommodation for her

disability and was terminated shortly after. Plaintiff's request for an accommodation is a

protected activity under the ADA. *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 706 (4th Cir. 2001). Thus, Plaintiff has sufficiently alleged a retaliation claim under the ADA.

### C. Defendant Burwell's Motion to Dismiss[12]

Defendant Burwell asserts that Plaintiff's Amended Complaint should be dismissed in its entirety because Plaintiff filed her action in this Court prior to the expiration of the 90-day agreed upon extension. In the alternative, Defendant Burwell contends that Plaintiff's retaliation claims must be dismissed as they were untimely amended in her EEOC Charge, and her claims regarding the Performance Improvement Plan ("PIP") as untimely raised with her EEO Counselor.

### 1. Untimely Filing in Federal Court

42 U.S.C. § 2000e–16(c) permits a complainant to file in district court once 180 days have elapsed from the date of filing the initial administrative charge of discrimination.[13] 42 U.S.C. § 2000e–16(c) ("after one hundred and eighty days from the filing of the initial charge with the department [or] agency . . . an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e-5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant."). *See also* 29 C.F.R. § 1614.407 ("A complainant who has filed an individual complaint, an agent who has filed a class

---

[12] The Amended Complaint styles Plaintiff's disability discrimination claim as "in violation of the ADA and/or the Rehab Act." ECF No. 14 at 10. Plaintiff cannot bring an ADA directly against the Agency. *See* 42 U.S.C. § 12111(5)(B)(i) (specifically excluding the federal government from the ADA's coverage). The Rehabilitation Act "is the exclusive means by which a plaintiff may raise claims against federal agencies relating to handicap discrimination." *Brown v. Henderson*, 6 F. App'x 155, 156 (4th Cir. 2001) (quoting *Spence v. Straw*, 54 F.3d 196, 197 (3d Cir. 1995)). Plaintiff's ADA claim is therefore dismissed.

[13] Where a plaintiff files prematurely, before the passage of 180 days after filing the initial charge, courts are split as to whether this defect can be cured. *See Glidden v. Furgal*, No. CA 3:08-1532-JFA-PJG, 2009 WL 4893924, at *5 (D.S.C. Feb. 20, 2009) (discussing the split), *report and recommendation adopted*, No. CA 308-1532-JFA-PJG, 2009 WL 632315 (D.S.C. Mar. 11, 2009), *vacated* (Mar. 17, 2009) (plaintiff produced EEOC right-to-sue letter in motion for reconsideration pleadings).

complaint or a claimant who has filed a claim for individual relief pursuant to a class complaint is authorized under title VII, the ADEA and the Rehabilitation Act to file a civil action in an appropriate United States District Court: . . . (b) After 180 days from the date of filing an individual or class complaint if an appeal has not been filed and final action has not been taken . . . .").

Where a plaintiff files her complaint in federal court before the right to file has vested, the challenge is properly considered an attack on this Court's jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Thanh Tan Nguyen v. Donahoe*, No. 13-CV-800-AW, 2013 WL 3730681, at *2 (D. Md. July 12, 2013) ("failing to wait for 180 days after filing his EEO complaint before filing suit in this Court" considered under Rule 12(b)(1)); *Avery v. Astrue*, No. WDQ-11-2612, 2012 WL 1554646, at *3 (D. Md. Apr. 27, 2012) ("Because he did not wait 180 days or for a decision on his appeal, the Court must dismiss this action for lack of subject matter jurisdiction."); *cf. Puryear v. Shrader*, No. PJM 11-3640, 2013 WL 1833262, at *2 (D. Md. Apr. 30, 2013), *aff'd*, 541 F. App'x 242 (4th Cir. 2013) (finding "because 180 days had not yet elapsed when she filed suit, the Court did not have *jurisdiction* over these claims when the suit was filed") (emphasis added).

The federal agency against which the complaint has been filed is required to "complete its investigation within 180 days of the date of filing of an individual complaint." 29 C.F.R. § 1614.108(e). But "[b]y written agreement *within [that] time period[]*, the complainant and the respondent agency may voluntarily extend the time period [for the investigation] for not more than an additional 90 days." 29 C.F.R. § 1614.108(e) (emphasis added). The signed Notice, therefore, may relieve the Agency from default judgement "as a sanction for the agency's failure to complete an investigation within the 180–day period specified at 29 C.F.R. § 1614.108(e)."

*Royal v. Dep't of Veterans Affairs*, EEOC Request No. 0520080052, 2009 WL 3163287, \*1

(Sept. 25, 2009).  *See also Mallik v. Sebelius*, 964 F. Supp. 2d 531, 537 (D. Md. 2013)

(discussing the administrative-level sanctions for unsatisfactory Agency investigations found

proper in *Talahongva–Adams v. Dep't of the Interior*, EEOC Appeal No. 0120081694, 2010 WL

2253800 (May 28, 2010) and *Reading v. Dep't of Veterans Affairs*, EEOC Appeal No.

07A40125, 2006 WL 2992420 (Oct. 12, 2006)). But here, it does little to upset Plaintiff's right to

sue in this Court.

 Plaintiff filed a formal administrative complaint of discrimination with the Agency on

October 12, 2015. ECF No. 25-2 at 15; *see also* ECF No. 25-2 at 32 (Agency's Notice of

Receipt). The Agency's 180-day deadline to complete the investigation of the complaint ran on

April 9, 2016.[14]  Two days prior, the Agency investigator emailed Plaintiff's counsel "requesting

that [Plaintiff] sign and return the attached extension ASAP." ECF No. 46-2. Plaintiff returned

the "Notice of Extension," dated April 11, 2016 and signed only by Plaintiff.  The Notice merely

states that: "I agree to extend the [complaint processing and/or investigative] time frame for the

above referenced complaint up to 90 days. I understand that this extension does not

automatically mean that it would require the full 90 days." ECF No. 25-2 at 35. Plaintiff then

filed this civil action on May 13, 2016, before the 90-day extension expired. Despite the filing a

complaint in federal court, the Agency completed its investigation on June 15, 2016. ECF No.

25-2 at 2.

 Defendant Burwell contends that Plaintiff's signed Notice of Extension, when read with

the December 22, 2015 claims acceptance letter—a document provided three months prior to the

---

[14] Defendant Burwell writes, "The Agency's 180 day deadline to complete the investigation of the
complaint was scheduled to run on April 11, 2016. ECF No. 25-1 at 21." That is incorrect. One hundred
and eighty days after October 12, 2015 is April 9, 2016.

Notice of Extension—provided sufficient notice to Plaintiff that the 90-day extension would bar Plaintiff from filing a civil action in this Court for an additional 90 days. The December 22 claims acceptance letter states that "the regulations require the Agency to complete its investigation of this complaint within 180 calendar days from the date on which the individual complaint was filed except when a complainant and the agency voluntarily agree, in writing, to extend the time period by up to an additional ninety (90) calendar days, or where a complaint is amended." ECF No. 25-2 at 33. Defendant Burwell asserts that the letter of receipt provides Plaintiff with sufficient notice that the Notice of Extension implicitly contained a waiver of Plaintiff's statutory right to sue after 180 days. ECF No. 35 at 5.[15]

Even assuming the Agency provided Plaintiff with sufficient notice of the effects of the Notice of Extension, the Notice of Extension itself was untimely executed, two days after the 180-day investigatory period ended. Accordingly, Plaintiff's statutory right to file in this Court pursuant to 42 U.S.C. § 2000e–16(c) vested on April 9, 2016, prior to execution of the agreement. Importantly, Defendant provides this Court no authority for how a two-line Notice— executed only for the purpose of extending the investigation time for "up to 90 days"—divests Plaintiff of a right that vested two days before and that must be strictly construed and vigorously honored. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 94 (1990) (citing *Library of Congress v. Shaw*, 478 U.S. 310 (1986)) ("§ 2000e–16(c) is a condition to the waiver of sovereign immunity and thus must be strictly construed."). *Cf. Harris v. United States*, 919 F. Supp. 343 (S.D. Cal. 1996) (dismissing complaint where plaintiff consent to a 90-day extension

---

[15] Defendant Burwell also argues that "the Agency was deprived of the opportunity to conclude its investigation within the time frame agreed to by Plaintiff. The Agency was forced to abbreviate and terminate the investigation because of Plaintiff's failure to cooperate." ECF No. 25-1 at 5. This argument has no merit. The Agency completed its record of investigation on June 15, 2016, with no mention of an abbreviated investigation period, contradicting Defendant Burwell's claim that the investigation was abbreviated or terminated.

*within the 180-day period* for agency review and then elected to terminate her complaint following the completion of the investigation).

Moreover, permitting Plaintiff's suit is consistent with the purpose of the 180-day requirement. The 180-day time limit provides "prompt access to the courts in discrimination disputes, a purpose that is so important that the administrative process will be given only a finite time to deal *alone* with a given dispute." *Payne v. Locke*, 766 F. Supp. 2d 245, 249 (D.D.C. 2011) (emphasis added) (internal citations and quotations omitted). Accordingly, once the 180 days vests, the Plaintiff may exercise her right to bring her grievance to this Court. Indeed, after the 180-day period, the Plaintiff may simply not participate in the administrative investigation process and instead leave the fate of her claims to the federal courts to decide. *See Payne*, 766 F. Supp. 2d at 250 (D.D.C. 2011) (quoting *Laudadio v. Johanns*, 677 F. Supp. 2d 590, 602 (E.D.N.Y. 2010)); *see also Wilson v. Pena*, 79 F.3d 154, 166 (D.C. Cir. 1996) ("Once a complainant files a complaint or appeal and cooperates with the agency or EEOC for 180 days, he is not required to take any further action to exhaust his administrative remedies."); *Brown v. Tomlinson*, 462 F. Supp. 2d 16, 21 (D.D.C. 2006) ("Failure to cooperate or dilatory behavior at that point [after 180 days from the filing of the complaint] in the administrative proceedings alone should not result in the loss of the right to file suit in district court.").  Plaintiff's federal action, therefore, will remain in this Court.

### 2.  Retaliation Claims against Defendant Burwell

Defendant Burwell next contends Plaintiff's Title VII pregnancy-based retaliation claims against the Agency must be dismissed because Plaintiff failed to timely amend the EEO Charge to include this claim. Timely amendment of the EEOC Charge is properly considered under Rule 12(b)(1) as it goes to the scope of Plaintiff's exhausted claims. *Henderson v. Town of Hope*

*Mills*, No. 5:13-CV-635-FL, 2013 WL 5954816, at *3 (E.D.N.C. Nov. 6, 2013), *aff'd*, 594 F.

App'x 195 (4th Cir. 2015) (due to untimely amendment of EEOC charge, "the court lacks

jurisdiction to hear his retaliation claim"). *Cf. Miles v. Dell, Inc.*, 429 F.3d 480, 492 (4th Cir.

2005) (citing *Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999) (due to

improper amendment of initial charge considered failure to exhaust administrative remedies

circuit court vacated judgment on the merits of the claim).

Plaintiff contends that the retaliation claim was part of the verified charge and the

complaint initially lodged with the EEO and so the claim was exhausted.  With regard to

retaliation for opposing discriminatory employment practices based on sex and disability, the

Court agrees. When Plaintiff first filed her formal complaint with the EEO, she noted (by

checking appropriate boxes) that she had been discriminated based on race, sex and disability

specifically "high risk pregnancy." Plaintiff also maintained a retaliation claim, specifically

stating in the retaliation section of the form that: "Complainant disclosed she was in a high risk

pregnancy and needed accommodation. Complainant was then terminated on August 25, 2015."

In another section of the form where Plaintiff was asked to "best describe" her complaint,

Plaintiff stated that she was terminated after she advised her NIH supervisors that "she was in a

high risk pregnancy and needed an accommodation to reduce the amount of walking she was

required to perform"; that she was placed on a performance improvement plan "immediately

after she told coworkers that she was pregnant and she began showing" and was terminated at the

end of PIP after requesting accommodation for her pregnancy; and finally that she was

terminated from her contract position with Leidos at the request of NIH after requesting a further

accommodation for her pregnancy on August 12, 2015. ECF No. 30-1 at 3.

In response, on December 22, 2015, the Agency then issued Plaintiff a letter identifying the verified charge as follows:

> In your client's complaint, Ms. Sillah alleges she was discriminated against on the bases of her race (Black), sex (female) and disability (physical) when:
> 1. On August 25, 2015, Complainant was terminated from her contract position as a Patient Care Coordinator II. Complainant alleges that she was terminated by her supervisors upon learning of her high risk pregnancy.

ECF No. 20-2.

The EEO investigator then specifically explored Plaintiff's retaliation claims. The investigator asked Plaintiff to "identify the EEO activities that you engaged in that resulted in the reprisal action at issue in this complaint." ECF No. 25-2 at 54 (Plaintiff's Affidavit, Feb. 19, 2016). The investigator further asked how the individuals responsible for the retaliation "would have known of this prior EEO activity at the time of the treatment at issue in this current complaint." *Id.* In response, Plaintiff explains that after informing Ms. Talar-Williams of her high-risk pregnancy and her intent to complain to the EEO, she was terminated. *Id.*

Clearly Plaintiff's EEO complaint, the verified charge and the subsequent investigation all contemplated Plaintiff's Title VII retaliation claim on the basis of sex. The verified charge includes Plaintiff's protected activity of informing her supervisors of her high risk pregnancy; the adverse action of termination, and the temporal and causal connection between the two. The investigation further explores whether Plaintiff's additional protected activity of complaining to the EEO factored into terminating Plaintiff as further evidence in support of Plaintiff's retaliation claim. *See Wilkinson v. Rumsfeld*, 100 F. App'x 155, 158 (4th Cir. 2004) (finding a claim administratively exhausted where "the agency itself investigated the type of activities that the District Court refused to consider"); *Rock v. McHugh*, 819 F. Supp. 2d 456, 472 (D. Md. 2011)

(finding a claim properly exhausted where the fruits of the fact investigation revealed a claim of disability discrimination); *Westmoreland v. Prince George's Cty., Md.*, No. 09-CV-2453 AW, 2010 WL 3369169, at *5 (D. Md. Aug. 23, 2010) (citing *E.E.O.C. v. Gen. Elec. Co.*, 532 F.2d 359, 365 (4th Cir. 1976)) (finding claim exhausted where the investigation revealed evidence of discrimination on other grounds not alleged in the administrative complaint). Plaintiff's Title VII pregnancy and disability retaliation claims, therefore, survive dismissal.

### 3.   Untimely Contact with the EEO Office Barring PIP Claims

Defendants next assert that Plaintiff's claims regarding placement on a PIP are barred by Plaintiff's late contact with the EEO office. Plaintiff concedes, however, that being placed on a PIP is not itself actionable under Title VII. ECF No. 30 at 13 (citing *Jensen-Graf v. Chesapeake Employers' Ins. Co.*, 616 F. App'x 596, 598 (4th Cir. 2015) (plaintiff failed to state a claim because PIP did not involve lower pay, demotion, non-selection, or significantly different responsibilities); *Wooten v. Gruenberg*, 2016 WL 1364043, at *6 (E.D. Va. Apr. 4, 2016) (PIP not an adverse employment action); *Verrier v. Sebelius*, 2010 WL 1222740, at *10 (D. Md. Mar. 23, 2010) (PIP was not actionable because it "did not alter any aspect of [plaintiff's] career)). Rather,  Plaintiff's allegations regarding placement on a PIP may provide further background or evidentiary support for her other claims. *Cf. Evans*, 80 F.3d at 962 ("Charges filed outside [the required] time frame are barred, but a discriminatory allegation may still constitute relevant background evidence for valid claims."); *Newby v. Whitman*, 340 F. Supp. 2d 637, 647 (M.D.N.C. 2004) (applying *Evans* to a time-barred incident with a supervisor).

### D.   Defendant Burwell's Motion to Dismiss or for Summary Judgment

Purportedly seeking dismissal pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Burwell's motion attacks the viability of the asserted claims in the Amended Complaint. Defendant

Burwell frames her motion as a motion to dismiss, or in the alternative motion for summary judgment; however in addressing the merits of Plaintiff's claims, Defendant's challenges are not confined to the four corners of the Amended Complaint. *See Helfand v. W.P.I.P., Inc.*, 165 F. Supp. 3d 392, 397 n.6 (D. Md. 2016). Instead Defendant Burwell relies on the record of investigation, attached as an exhibit to the motion, and argues the merits of what "the evidence reveals," thereby urging this Court to treat her motion to dismiss as one for summary judgment in her favor. *See e.g.*, ECF No. 25-1 at 26.

At the outset, the Court notes that Defendant Burwell clarified at the March 17, 2016, motions hearing that she too deems dismissal of Plaintiff's race discrimination claims warranted under Rule 12(b)(6) for the same deficiencies in pleading as raised by Leidos. Accordingly, for the same reasons articulated above, the Court grants this motion with leave for Plaintiff to amend her complaint as to her race-based discrimination claims under Title VII and § 1981.

Plaintiff also concedes that she cannot pursue punitive damages against Defendant Burwell as a matter of law, and she only seeks punitive damages against Defendant Leidos, a private employer. ECF No. 30 at 18 (citing ECF No. 14 at 13 (seeking "punitive damages as permitted by law")). Accordingly, Defendant Burwell's motion to dismiss as to the claim for punitive damages is granted.

To the extent Defendant Burwell seeks summary judgment of Plaintiff's remaining claims, the Court will deny the request. A district judge retains  "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." *Strothers v. City of Laurel, Md.*, 118 F. Supp. 3d 852, 860 (D. Md. 2015) (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and*

*Procedure* § 1366 (3d ed. 2004, 2011 Supp.)); *accord Sager v. Hous. Comm'n of Anne Arundel Cty.*, 855 F. Supp. 2d 524, 542 (D. Md. 2012). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.*

No formal discovery has been taken in this action. Ordinarily, "[a] district court should refuse to grant summary judgment when an opposing party needs additional time to complete discovery and properly respond to the motion." *Nat'l Coal. for Students with Disabilities Educ. & Legal Def. Fund v. Scales*, 150 F. Supp. 2d 845, 848 (D. Md. 2001) (citing *HealthSouth Rehabilitation Hosp. v. American Nat. Red Cross*, 101 F.3d 1005, 1009 (4th Cir. 1996)). Where, as here, additional discovery ought in fairness to be taken prior to resolution of summary judgment motions, a plaintiff must submit an affidavit demonstrating why certain discovery is necessary. *See* Fed. R. Civ. P. 56(d); *Pine Ridge Coal Co. v. Local 8377, United Mine Workers of America*, 187 F.3d 415 (4th Cir. 1999). Here, Plaintiff has satisfied Rule 56(d) regarding the need for additional discovery to be taken prior to the resolution of Defendant Burwell's summary judgment motion, and so Defendant Burwell's motion is denied.

## IV. CONCLUSION

For the reasons discussed above, Defendant Leidos' Motion to Dismiss is GRANTED in part because (1) Plaintiff failed to exhaust her administrative remedies with respect to her claim of race discrimination under Title VII, the Maryland Human Relations Act, and the Montgomery County Human Rights Act; and (2) Plaintiff failed to adequately plead race discrimination under § 1981. Plaintiff will be given 14 days to amend her § 1981 claim consistent with this opinion.

The remainder of Defendant Leidos' Motion to Dismiss is DENIED. As a result, the following claims against Leidos are properly before this Court and have been adequately plead: (1) sex/pregnancy discrimination under Title VII, the Maryland Human Relations Act, and the Montgomery County Human Rights Act; (2) disability discrimination under the ADA, Rehabiltation Act, the Maryland Human Relations Act, and the Montgomery County Human Rights Act; and (4) retaliation under the ADA, Rehabiltation Act, the Maryland Human Relations Act, and the Montgomery County Human Rights Act related to disability and under Title VII related to sex/pregnancy.

For the reasons discussed above, Defendant Burwell's Motion to Dismiss is GRANTED in part because Plaintiff failed to adequately plead race discrimination under Title VII, the Maryland Human Relations Act, and the Montgomery County Human Rights Act. Plaintiff will be given 14 days to amend her Title VII and § 1981 race discrimination claims consistent with this opinion. The remainder of Defendant Burwell's Motion to Dismiss is DENIED. As a result, the following claims are properly before this Court and have been adequately plead against Defendant Burwell: (1) sex/pregnancy discrimination under Title VII, the Maryland Human Relations Act, and the Montgomery County Human Rights Act; (2) disability discrimination under the Rehabiltation Act, the Maryland Human Relations Act, and the Montgomery County Human Rights Act; and (4) retaliation under the ADA, Rehabiltation Act, the Maryland Human Relations Act, and the Montgomery County Human Rights Act related to disability and under Title VII related to sex/pregnancy.

A separate order will follow.

| | |
|---|---|
| 3/22/2017 | /S/ |
| Date | Paula Xinis |
| | United States District Judge |